## Illinois Central Railroad Company v. Hazel Braden, Administratrix.

1. ASSUMED RISK—*when doctrine of, applies.* A servant cannot recover for personal injuries sustained as a result of his failure to obey the orders of his superiors.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the February term, 1906. Reversed, with finding of facts. Opinion filed September 14, 1906.

KRAMER & KRAMER and B. A. CAMPBELL, for appellant; JOHN G. DRENNAN, of counsel.

WILLIAM A. SCHWARTZ, for appellee; CHARLES A. KARCH, of counsel.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case, in the Circuit Court of St. Clair county, by appellee against appellant, to recover damages resulting from the death of appellee's intestate alleged to have been caused by the negligence of appellant. Trial by jury. Verdict and judgment in favor of appellee for $4,500.

The declaration avers that appellee's intestate was in the service of appellant; that his duties required him to repair semaphores, blocks, block signals and block systems; that while engaged in repairing certain fixtures of one of appellant's semaphores, appellant negligently and without any warning dropped one of the arms of the semaphore, thereby throwing him to the platform below, a distance of twenty feet, causing his death; that appellant knew, or by the exercise of reasonable care ought to have known, that he was at the time upon the semaphore pole engaged in making such repairs; and that he was in the exercise of due care and caution for his own safety.

With respect to the merits of this case, it turns upon two questions of fact. These are: did appellant know, or by the exercise of reasonable care on its part would have known, that appellee's intestate was upon the semaphore pole at the time of the injury? and did appellee's intestate exercise due care and caution for his own safety on the occasion and at the time of his

injury? It devolved upon appellee to prove the affirmative of both propositions, and without proof of both there can be no recovery.

The semaphore was in use by appellant at Belleville, in connection with its "block signal service." The arms of the semaphore were used as a means of signaling approaching trains, and were manipulated by the telegraph operator from his place in the telegraph office, by means of some appliances in use for that purpose. The dropping of the semaphore arm indicated to those in charge of an approaching train that the way was clear, and that the train might continue its course, if in motion, or proceed, if it had come to a stop.

Appellee's intestate had been in the service of appellant as a "signal maintainer" for a year and a half, and was an experienced man in that line of work and in that department of appellant's service, and was familiar with his duties and the manner of doing the work required, and with ordinary risks and dangers incident thereto. He with a number of others was under a general foreman of that department. In the performance of his work it was frequently necessary for him to climb semaphore poles, and such was the case on the occasion of his injury. His foreman had given him explicit "instructions always to notify the operator before going on the pole, so they would not throw the board while he was up there."

On the night before appellee's intestate was injured, it was discovered that the light at the top of a semaphore, at Belleville, was out of repair, and on the next morning, in the ordinary course of business in that department, he was sent from Pinckneyville to Belleville, to make the necessary repairs. He reached Belleville about noon, and without notifying the operator that he was going on the pole, he ascended it by means of the attached ladder, and assumed a position in reach of his work, with one foot on the ladder and the other thrown over the semaphore arm. He had

been in this position but a few minutes, somewhere from two or three to twenty, according to the various estimates of the witnesses, when the operator from his place in the telegraph office, manipulated the appliance for dropping the semaphore arm, to signal a train; the arm dropped in response to the operator's act, and appellee's intestate fell from it to the platform below and was so injured as to cause his death.

In the line of his duty the telegraph operator had control of the semaphore, had the handling of telegraph messages and train orders, and it was his duty to signal the moving of trains by means of the semaphore; and it is not contended that the evidence proves that appellee's intestate "notified the operator before going on the pole, so that the operator would not throw the board while he was up there." But counsel contend that notwithstanding no such notice was given to the operator, appellant had such notice or ought to have had, because the operator knew on the evening before that the light was out of repair and notified the day operator next morning; the general signal service foreman had been notified, and sent appellee's intestate from Pinckneyville to Belleville to repair it, and after he reached Belleville that day the operator knew that he had come there for that purpose. Now it must be borne in mind here, that appellee's intestate and all the other parties knew that there could be no danger to the intestate until he had actually climbed up the pole, that no one not physically present and in sight of him could know at what particular time he would climb the pole but himself; and he and all others knew that no notice could avail except notice to the operator, and he was the particular agent of appellant whose duty it was to give that notice, "so that the operator would not throw the board while he was there." This notice he failed to give, and the undisputed evidence is that the operator did not know that he was on the pole when the board was thrown, when the arm was caused to drop.

Counsel for appellee contend that if the operator did not know of this fact he ought to have known it, and base this contention on the fact that the operator knew that the intestate had come to Belleville for the purpose of repairing the light and that he had commenced to get ready to do so. All there is on that feature of the case is disclosed in the operator's testimony. He testified in substance that about two or three minutes before the injury occurred, the intestate came into the telegraph office where he was at work and asked him for an electric light globe; that he was busy at the time the intestate came in, copying an order for a train, and could not give him the globe at that time and told him he would get it for him as soon as he got through with the order; that the intestate went out of the telegraph office to the work room where the clerks have their desks, and he supposed remained there; that when he got through copying the order he delivered it to the conductor, and in order to let the train proceed it was necessary for him to drop the board to show that the block was clear; this he did and saw intestate after he had fallen. He further testified that the semaphore pole stood on the outside of the building within about seven feet of the desk where he was at work on the inside, but that the top of the pole extended so far above the roof that it would be impossible for him to see a man up there, and that when he "dropped the board or arm he had no idea Mr. Braden (appellee's intestate) was on the pole." The operator further testified that the intestate did not tell him that he had come there to fix the light on the semaphore, but knowing that was a part of his duty, he supposed it to be his purpose there, and he supposed that was what he wanted with the globe.

A train was in the vicinity seeking a clearance, the operator was busy transcribing a message from the train dispatcher, he informed the intestate he would get him a globe as soon as he got through with that most important matter. The intestate went into an-

other room, and he believed, and he had reason to believe, that he would remain there until he gave him the globe.

There is nothing in all this that could cause any reasonable man to suspect that the intestate would go upon the pole without either waiting for the operator to give him the globe or notifying the operator, as both he and the operator knew it was his duty to do. The operator did not know that the intestate was on the pole when he dropped the arm, and it is apparent to the court that all reasonable and disinterested minds will agree that he was not guilty of negligence in not knowing.

The judgment of the Circuit Court is reversed, and we find as ultimate facts to be incorporated in the judgment, that appellant was not guilty of the negligence charged in the declaration, or any part thereof; and that William B. Braden, appellee's intestate, came to his death as the result of his own negligence and breach of duty, in failing to notify the operator that he was going upon the semaphore pole, from which he fell.

*Reversed.*