Wetzel v. Baltimore & Ohio Southwestern R. R. Co., 147 App. 195.

will place the burden on him to show that the balance as returned ·is not correct.''

While we cannot hold that there is no evidence in this record tending to prove that the balances shown and returned to appellee, in her pass-book, were not correct, it does appear to us that she has fallen quite short of discharging the full burden which the law in such cases imposes upon her, especially as to some of the items embraced in her claim and in the verdict returned by the jury. To our minds the weight of the evidence so greatly preponderates in favor of the correctness of the balances, as stated in the pass-book, as to make it our duty to reverse the judgment of the trial court and remand the case.

The judgment of the City Court of East St. Louis is reversed and the cause remanded.

*Reversed and remanded.*

---

### Ed. Wetzel, Administrator, Appellee, v. Baltimore & Ohio Southwestern Railroad Company, Appellant.

MASTER AND SERVANT—*when latter cannot recover*   There can be no recovery for personal injuries sustained by a servant as the result of the servant's failure to obey the proper orders and directions of the master with respect to the servant's safety.

Action in case for death caused by alleged wrongful act. Appeal from the City Court of East St. Louis; the Hon. W. J. N. MOYERS, Judge, presiding. Heard in this court at the August term, 1908. Reversed. Opinion filed March 4, 1909.

KRAMER, KRAMER & CAMPBELL, for appellant; EDWARD BARTON, of counsel.

L. O. WHITNEL, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case, in the City Court of East

St. Louis, by appellee against appellant, to recover for the death of appellee's intestate while in the service of appellant as a car repairer. Trial by jury. Verdict and judgment in favor of appellee for $1,400.

We quote the following from the statement of the case by counsel for appellee: "The appellant operates in connection with and as part of its railroad, certain switch and repair yards at Cone Station in the city of East St. Louis. One part of these switch yards consists of a lead track and sixteen switch tracks connected therewith. Another part consists of what is termed repair tracks. In these yards the appellant employs a large number of servants, among others, car repairers, who work on the repair tracks, doing what is termed heavy repair work, and also other car repairers who work in the switch yards on the sixteen switch tracks, doing what is termed light work. The distinction between heavy and light repair work is one of extent of injured or damaged condition of the car. The question of whether or not the car is in need of heavy or light work is determined by the car inspector who puts a blue card on the car indicating heavy repair. In these yards appellant does its switching of cars, breaking up and making up of trains; this work being done by switching crews. The car repairers work under a foreman known as foreman of car repairers, while the switching crews are directed by another and different foreman known as foreman of switching crew.

"About July 16th, Walla Casner, the deceased, was employed by appellant as car repairer, and went to work on heavy work on the repair tracks and continued in this service until about the 16th day of September, when he was transferred by appellant to light repair work out in the switching yards, where the work of switching, breaking up and making up of trains was done. The deceased had never had any experience in this work. On the morning of the 26th of September, there was sitting on track No. 8, among

others, two cars. One of them was a steel car and the other a wooden car. The steel car had a knuckle pin out. The wooden car had what they call dead timbers pulled out, or the draw head. The work necessary to repair the steel car was light repair work and that necessary to repair the wooden car heavy repair work. The light repair work would be done on the tracks in the yards where the car would be found by the light repairer. On the wooden car there was a blue card, which indicated heavy repair wark, and on the steel car there was no card. Walla Casner, the deceased, was, aforesaid, doing light repair work on these tracks. About fifteen minutes before he was found injured, the deceased was seen going across the yards in the direction of where the cars in question were located, with a knuckle pin, or knuckle lock in his hand. He also had a bucket of tools at that time. When he was found dead, the knuckle pin was lying on the sill of the steel car with some of the tools. The bucket and other tools were three car lengths from the end of this car, or about perhaps 150 feet from the tools on the end of the sill to the place where the body was taken out from under the cars. The time intervening from the time the deceased was last seen going across the yards in the direction of the steel car until he was found injured was not exceeding fifteen minutes. During that time an engine had kicked a string of cars in on this track No. 8, without sounding the whistle or ringing a bell and running at a rate of speed of from ten to fourteen miles an hour."

In addition to what is quoted above the undisputed evidence proves that when appellee's intestate was transferred from the heavy repair works department to the department where the light repair work was done, he was given explicit instructions and was cautioned and warned by appellant, to put out a blue flag at both ends "of the track when at work thereon." He was told by appellant, "Don't fail to put out a blue flag at both ends of those tracks; don't fail to do that now. Whatever

work you do, or how long it takes you to do it, don't fail to put out the blue flag; that is your only protection." He was shown the blue flags and where they were kept for his use and how to use them to "protect himself" when at work repairing a car. The undisputed evidence also clearly proves that on the occasion of his injury and death, he did not put up the blue flag, and the evidence wholly fails to prove that he did anything to give notice of his presence on the track where he was injured. This state of case precludes a recovery. There can be no recovery for personal injury sustained by a servant as a result of the servant's failure to obey the proper orders and directions of the master with respect to the servant's safety. I. C. R. R. Co. v. Braden, 128 Ill. App. 265.

We are of opinion that the trial court erred in refusing to direct a verdict in favor of appellant. The judgment of the City Court of East St. Louis is reversed, and we find as an ultimate fact to be incorporated in the judgment, that appellee's intestate was guilty of negligence which contributed to the injury of which he died.

*Reversed.*